CHAROLETTE R. MOORE,

        Plaintiff,

v.                                       Case No.  5:07-cv-241-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.

_____

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security

("the Commissioner") denying her applications for a period of disability, disability

insurance benefits, and supplemental security income. (Doc. 1.) The Commissioner has

answered (Doc. 15), and both parties have filed briefs outlining their respective

positions. (Docs. 19 & 20.) For the reasons discussed below, the Commissioner's

decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On March 24, 2004, Plaintiff filed applications for a period of disability, disability

insurance benefits, and supplemental security income, alleging a disability onset date of

December 12, 2002. (R. 287-88.) Plaintiff's application was denied initially and upon

reconsideration. (R. 282-86.) Thereafter, Plaintiff timely pursued her administrative

remedies available before the Commissioner and requested a hearing before an

Administrative Law Judge ("ALJ"). (R. 37.) The ALJ conducted Plaintiff's administrative

hearing on March 3, 2006. (R. 39-69.) The ALJ issued a decision unfavorable to Plaintiff

on July 13, 2006. (R. 12-22.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 6-8, 11.) Plaintiff then appealed to this Court. (Doc. 1.) On August 24, 2007, the matter was remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) so that relevant documents could be admitted into the record and included with the certified administrative record. (Doc. 13.) Upon completion of the proceedings on remand, the Court granted the Commissioner's unopposed motion to reopen the case on April 18, 2008. (Docs. 14 & 17.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *See* Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

---

[10] 20 C.F.R. § 404.1520(c).

[11] Id. § 404.1520(d).

[12] Id. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
Id. (internal citations omitted).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty eight (48) years old at the time of the ALJ's decision on July 13, 2006. (R. 12-22, 48, 287.) She has a high school education, attended community college for a couple of years, received cosmetology training, and has previous work

---

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

experience as a data processor clerk and campus monitor. (R. 53-54, 322-29, 360, 369.) Plaintiff contends that she has been unable to work since December 12, 2002 due to a back disorder, bilateral carpal tunnel syndrome, asthma, diabetes, and depression. (R. 286-88, 298, 364.) Plaintiff is insured for benefits through June 30, 2009. (R. 296.)

A.     **The ALJ's Findings**

In the ALJ's review of the record, including Plaintiff's testimony and medical records from several health care providers, the ALJ determined that Plaintiff suffers from diabetes mellitus, morbid obesity, right carpal tunnel syndrome, degenerative disc disease of the cervical spine, and a history of left knee arthroscopy. (R. 17.) While these impairments are severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 18.) Specifically, the ALJ found that the objective medical evidence failed to establish that Plaintiff met the criteria of Section 1.00 of the Listings of Impairments. (R. 18.)

The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to stand and walk two hours in an eight hour workday, sit six hours in an eight hour workday, and lift ten pounds. (R. 18.) The ALJ limited Plaintiff to occasional climbing, stooping, kneeling, crouching, crawling, and overhead reaching. Further, the ALJ found that Plaintiff should avoid exposure to fumes, odors, dust, gases, and poor ventilation. (R. 18.) Based upon Plaintiff's RFC, the ALJ found that Plaintiff could perform her past

relevant work as a campus monitor and, therefore, concluded that Plaintiff was not disabled. (R. 21-22.)

Plaintiff raises three issues in her appeal all of which pertain to the ALJ's assessment of either Plaintiff's obesity or her complaints of depression. Accordingly, the Court will limit its discussion of Plaintiff's medical records to Plaintiff's depression and obesity.

**B.    *Medical Evidence***

**1.    Depression**

Despite the fact that Plaintiff reportedly has a long history of depression, Plaintiff does not allege depression in her initial correspondence with the Social Security Administration. (R. 151, 153, 363-70.) In fact, her initial "Disability Report," which she prepared in April 2004, made no mention of any mental health complaints. (R. 371-80.) Further, in her Adult Function Report dated August 4, 2004, Plaintiff noted that she did not have problems getting along with family, friends or neighbors, and although she stated that she occasionally forgot about simple things, she advised that she was able to follow written and spoken instructions "well" and that she is capable of taking care of her personal needs and remembering to take her medications without reminders. (R. 332, 335-36.)

Plaintiff first mentions mental health complaints in a Disability Report on Appeal dated January 31, 2005, in which she stated that the physical limitations arising from her chronic physical complaints caused her to feel depressed. (R. 340.)

In Plaintiff's Disability Report on Appeal dated June 23, 2005, Plaintiff advised that, beginning in March 2005, she began to have progressively worse memory and concentration problems, frequent crying spells, and suicidal ideations—all of which she attributed to her physical complaints. (R. 298.)

Medical evidence concerning Plaintiff's mental health complaints is largely benign. Between March 2004 and February 2006, Plaintiff regularly reported to Community Medical Care Center for medical treatment. (R. 198-275.) She was seen more than fifteen times and, other than a single progress note from her December 2005 office visit in which Plaintiff was observed to have a depressed affect, there is no mention of Plaintiff having any mental health problems. (R. 216.)

In August 2004, Plaintiff presented to David M. Zelbovitz, Psy.D., at the Hope Counseling Centers for a general mental health status evaluation. Dr. Zelbovitz noted Plaintiff's subjective complaints of having difficulty sleeping, impaired concentration, problems with her short term memory, decreased motivation, increased irritability, and frequent crying spells. Plaintiff reported having suicidal thoughts in the past but advised that she currently had no suicidal ideations. (R. 153.) According to Dr. Zelbovitz, Plaintiff had "ongoing physical problems that keep her in constant pain. She has become depressed as a result." (R. 153.) Examination of Plaintiff revealed that she was alert and oriented as to time, place and person, her recall was normal and her reasoning was adequate. Dr. Zelbovitz noted that although Plaintiff's mood was mildly depressed, she was adequately dressed, well groomed and cooperative during the examination. He further noted that she was able to handle her activities of daily living. (R. 153-54.) He diagnosed Plaintiff with major recurrent depressive disorder and recommended that she

see a therapist for counseling and a psychiatrist to be evaluated for anti-depressants. (R. 154.)

During the same month as Plaintiff's initial mental status evaluation with Dr. Zelbovitz, Plaintiff also reported to Dr. Nagy Shanawany for a consultative examination pursuant to the Commissioner's request. (R. 119.) Plaintiff's chief complaints included: diabetes mellitus, asthma, hypertension, bilateral carpal tunnel syndrome, and back pain. (R. 119.) Plaintiff reported no mental complaints and examination revealed that she was alert and oriented to time, place and person. Her mood and affect were normal. Her intellectual functioning appeared normal. (R. 122.)

Plaintiff returned for a second general mental status evaluation with Dr. Zelbovitz in April 2005. (R. 151-52.) Plaintiff complained of a lack of interest in pleasurable activities, sleep and appetite disturbances, lack of energy, low self esteem, and feelings of guilt. Although she reported feeling some depressive symptoms for a number of years, she advised that she had never attended outpatient counseling. (R. 151.) Examination revealed that Plaintiff was alert and oriented with coherent thought processes, fair concentration, and intact memory. Plaintiff's mood was depressed and her affect was flat. Dr. Zelbovitz noted that Plaintiff's sleeping difficulties were due to her pain. He recommended counseling and a psychiatric evaluation to determine appropriate anti-depressant therapy. (R. 152.)

Also in April 2005, and at the request of the Social Security Administration, Plaintiff was seen by Dr. Donald J. Tindall. In addition to examining Plaintiff, Dr. Tindall also reviewed Plaintiff's medical records. (R. 157.) In his assessment of Plaintiff, Dr. Tindall noted that she had a history of untreated depression. He also noted Plaintiff's

self-reported symptoms including: intermittent crying, decreased appetite, inability to sleep well, lack of interest in pleasurable activities, poor concentration, and irritability. (R. 155.) Dr. Tindall's examination of Plaintiff revealed that she was alert and oriented, with a depressed mood but memory and cognitive function intact. (R. 157.)

A mental status examination in November 2005 revealed Plaintiff was alert and oriented with adequate memory function. (R. 193.)

Two nonexamining state agency psychologists had the opportunity to review Plaintiff's medical records and render an opinion concerning the severity of her alleged mental health impairments. In October 2004, Jeffrey L. Prickett, Psy.D. prepared a Psychiatric Review Technique in which he found that Plaintiff had an affective disorder but it was not a severe impairment. (R. 129-42.) Dr. Prickett noted a diagnosis of moderate major depressive disorder. (R. 132.) Dr. Prickett opined that, due to Plaintiff's mental impairment, she experienced mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation. (R. 139.) In rendering his opinion, Dr. Prickett noted that Plaintiff's allegation of memory difficulties was unsupported by clinical findings in the consultative examination performed by Dr. Zelbovitz. In sum, he opined that "Plaintiff appears primarily limited by her physical condition [and that her] [m]ental restrictions appear not severe." (R. 141.)

The second Psychiatric Review Technique was prepared by Deborah L. Carter, Ph.D. in May 2005. (R. 163-76.) Dr. Carter opined that, due to Plaintiff's mental impairment, Plaintiff experienced mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining

10

concentration, persistence and pace; and no episodes of decompensation. (R. 173.) Dr.

Carter noted that Plaintiff had no history of mental health treatment and that Plaintiff

was depressed due to her physical problems. She opined that, overall, Plaintiff's

concentration and short term memory were mildly decreased but her memory was

generally intact. Dr. Carter noted that Plaintiff "goes out regularly on her own, socializes

and functions in the community." (R. 175.) Dr. Carter went on to prepare a mental RFC

assessment in which she opined that although Plaintiff was moderately limited in her

abilities to: carry out detailed instructions, maintain attention and concentration for

extended periods, perform activities within a schedule, maintain regular attendance, be

punctual, complete a normal workday without interruptions from psychologically based

symptoms and perform at a consistent pace without an unreasonable number and

length of rest periods, Plaintiff was able to understand, remember and carry out simple

instructions and procedures; make simple decisions; concentrate to complete things she

starts; and able to cope with routine activities and changes. (R. 159-61.)

## 2. Obesity

Plaintiff's obesity is well documented in her medical records. In addition to

documenting the existence of the condition, Plaintiff's medical records also documented

the impact of obesity on Plaintiff's overall condition. Specifically, Plaintiff's low back pain

is attributed, in part, to Plaintiff's obesity. For example, in May 1999, Plaintiff's treating

chiropractor, Rael M. Gilchrist, attributed Plaintiff's low back pain to her excessive

weight and opined that it inhibited Plaintiff from being able to stand or walk for excessive

periods of time. (R. 71-73, 78.) During Dr. Zelbovitz's general mental status evaluation

of Plaintiff in April 2005, he noted that Plaintiff was grossly obese with slowed motor

activity. (R. 152.) All examining physicians have consistently observed Plaintiff's gait and posture to be normal.

Although Dr. Shanawany's examination of Plaintiff revealed tenderness and decreased range of motion in the lumbar spine, he also observed intact motor strength in Plaintiff's lower extremities bilaterally. Dr. Shanawany noted that Plaintiff's gait was normal and that she was capable of full weight bearing ambulation without an assistive device. (R. 122-23.)

State agency non-examining physician, Dr. Violet A. Stone, reviewed Plaintiff's medical records in April 2005 and opined that Plaintiff was capable of: lifting and/or carrying ten pounds occasionally and less than ten pounds frequently; standing and/or walking (with normal breaks) about six hours in an eight hour workday; sitting (with normal breaks) for about six hours in an eight hour workday; and pushing / pulling without limitation. (R. 178.) Dr. Stone noted that "Plaintiff's back pain is associated with obesity." (R. 182.) Accordingly, due to Plaintiff's obesity combined with her lower back pain and underlying spondylolisthesis, Dr. Stone assigned plaintiff postural limitations. Specifically, she found Plaintiff was limited to climbing, balancing, stooping, kneeling, crouching or crawling occasionally; bilateral overhead reaching occasionally. Dr. Stone further found that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (R. 178-81.)

C.    *Plaintiff's Activities of Daily Living*

In August 2004, Plaintiff completed a Function Report pursuant to the Commissioner's request, in which she reported that she had no problems with personal care and that she frequently attended church. (R. 331, 334, 348.) During her

correspondence with the Social Security Administration as well as through her communications with her various medical providers, Plaintiff advised that she is capable of: shopping for necessities; caring for her personal hygiene; doing light household chores such as: washing dishes, making her bed, and doing laundry. (R. 61, 151-52, 156, 347.) Plaintiff also advised that she regularly eats meals at friends' houses or at fast food restaurants. (R. 313, 332.)

During her hearing before the ALJ, Plaintiff testified that she is capable of driving a car with a manual transmission. (R. 54.) She also reported that she is capable of climbing stairs because she lives in an apartment on the second floor of the building and has to climb stairs in order to access it. (R. 51.)

Plaintiff's landlord completed a Third Party Adult Function Report in March 2005 in which she reported that Plaintiff goes outside everyday, is capable of driving her car, and is actively involved in her community. (R. 314-15.)

During her hearing before the ALJ, Plaintiff testified that she is unable to stand in one place for extended periods of time because she is "constantly shifting." (R. 59.) She estimated that she could stand for five to ten minutes at a time. (R. 59.) Plaintiff estimated that she was capable of walking only a few feet before she gets too tired to continue. (R. 59.)

## IV. DISCUSSION

Plaintiff raises three issues in her appeal. First, Plaintiff argues that the ALJ committed error by not finding her depression to be a severe impairment at step two of the sequential analysis. Second, Plaintiff contends that, because the ALJ did not find

Plaintiff's depression to be a severe impairment at step two, the ALJ also erred by failing to consider all of Plaintiff's impairments in combination. Third, Plaintiff argues that the ALJ erred by failing to analyze Plaintiff's obesity pursuant to Social Security Ruling 02-1p.

**A.**    ***The ALJ's Determination that Plaintiff's Depression Was a Non-Severe Impairment at Step Two of the Sequential Analysis Does Not Constitute Reversible Error.***

In response to Plaintiff's first argument, the Commissioner argues that the ALJ properly found that Plaintiff's depression was a non-severe impairment at step two because the evidence of record does not establish a mental impairment that significantly limits Plaintiff's ability to do basic work activities.[22]

At step two of the sequential analysis, the burden is on Plaintiff to demonstrate the existence of a severe impairment or combination of impairments which *significantly limit* her physical or mental *ability to perform basic work activities* for a full twelve month period.[23] At the second step, the ALJ must "consider the medical severity of [the claimant's] impairments."[24]  In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills."[25]

---

[22] Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28.

[23] 20 C.F.R. § 404.1520(c) (emphasis added).

[24] *See* Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting Phillips v. Barnhart, 357 F.3d. 1232, 1237 (11th Cir. 2004)).

[25] *See* id.

For a medical condition to be considered "severe," it must constitute more than a "deviation from purely medical standards of bodily perfection or normality."[26] Thus, a diagnosis of "depression" does not necessarily compel the conclusion that the condition is disabling.[27] Although the threshold for meeting the definition of a "severe impairment" at step two is low, the burden is on the Plaintiff to provide evidence demonstrating the disabling impact of her depression.[28] "An impairment or combination of impairments is not severe if it does not significantly limit [Plaintiff's] physical or mental ability to do basic work activities."[29]

Contrary to Plaintiff's assertion that the ALJ ignored Plaintiff's diagnosis of major depressive disorder, and rejected the mental assessment of her examining physicians,[30] the ALJ did in fact address Plaintiff's depression in his evaluation of the evidence. Specifically, the ALJ summarized the relevant portions of medical records and reports from: two non-examining state agency psychologists; Plaintiff's general health care provider, Community Medical Care Center; consultative examining physician, Dr. Donald J. Tindall; and David M. Zelbovitz, Psy.D, the psychologist who conducted consultative psychological evaluations of Plaintiff on two separate occasions. (R. 17-20.) The ALJ also comprehensively discussed Plaintiff's own testimony concerning her

---

[26] McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[27] 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[t]here must be a showing of related functional loss" for a psychological disorder to be considered disabling).

[28] Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512-.1513, .1521(a); *see also* SSR 85-28 (discussing definition of "basic work activities").

[29] 20 C.F.R. § 404.1521(a).

[30] (Doc. 19 p. 8.)

complaints of depression and reported activities of daily living. (R. 21.) Notably, the ALJ addressed and thoroughly discussed Plaintiff's complaints of depression throughout his analysis despite finding it to be "non-severe" at step two.  In his assessment of Plaintiff's residual functional capacity, the ALJ noted that "[Plaintiff's] subjective complaints and symptoms, including her allegations of pain and limitations as well as depression have been given a great deal of thought and carefully compared to the other evidence." This statement alone directly contradicts Plaintiff's contention that the ALJ "ignored" her depression when making his disability determination. In addition, the ALJ's determination that Plaintiff's depression was a "non-severe" impairment at step two of the sequential analysis is supported by substantial evidence.

One of the reasons the ALJ gave for concluding that Plaintiff's depression was non-severe was that the medical evidence demonstrated that her depression did not significantly limit Plaintiff's abilities to do basic work activities. Dr. Zelbovitz was the only mental health care practitioner that examined Plaintiff and he consistently observed Plaintiff to be alert and oriented with coherent thought processes, fair concentration, and intact memory. Notably, Dr. Zelbovitz opined that Plaintiff's mental health complaints were directly associated with her physical problems. Other examining physicians noted that, other than her self-reported symptoms, Plaintiff's mental status was unremarkable with intact intellectual functioning and memory. After reviewing Plaintiff's medical records, both non-examining state agency psychologists opined that Plaintiff's mental impairment did not impact her ability to understand, carry out and/or remember simple instructions.

In addition to the fact that the medical evidence did not support Plaintiff's position that her depression was a sever impairment, the ALJ noted that Plaintiff testified she has never sought mental health counseling therapy nor has she ever taken anti-depressant medication. This is despite the fact that Plaintiff is provided with all of her prescribed medications for free as part of a state program.

The ALJ's conclusion that Plaintiff's depression was not severe is also supported by Plaintiff's own testimony. Plaintiff testified that she is capable of following written and spoken instructions "well" and that she is capable of performing her activities of daily living without reminders or assistance from others. Plaintiff also reported that she has no difficulties getting along with other people. She testified that she is actively involved in her church and that she regularly eats meals with friends or at fast food restaurants. All of these reported activities are inconsistent with Plaintiff's claims of disabling depression.

Even if Plaintiff's depression was sufficient to pass step two analysis, however, the result would be no different because there was no evidence that Plaintiff's depression limited the mental activities required by her past relevant work as a campus monitor.[31] As discussed above, the ALJ took Plaintiff's depression into consideration when assessing her residual functional capacity as well as in his step four determination that Plaintiff was capable of performing her past relevant work as actually and generally

---

[31] *See, e.g.*, <u>Miller v. Barnhart</u>, 182 Fed. Appx. 959, 964 (11th Cir. 2006) (holding that even where ALJ improperly applied the regulations in reaching his decision, it did not constitute reversible error because the correct application would not contradict the ALJ's ultimate findings).

performed. (R. 21-22.) Accordingly, any error at step two of the sequential analysis would have been harmless in this case.

**B.** ***The ALJ Properly Considered the Cumulative Effects of Plaintiff's Impairments.***

To the extent that Plaintiff argues that the ALJ failed to consider her impairments in combination in making his disability determination, the Commissioner argues that the ALJ properly considered all of Plaintiff's impairments in combination as evidenced by the ALJ's express findings in his written decision.

Where a claimant alleges more than one impairment, the Commissioner has a duty to consider the cumulative effects of the impairments in making the determination as to whether the claimant is disabled.[32] According to the Eleventh Circuit, this burden is met where the ALJ expressly states that he has considered all of the medical evidence and concludes that Plaintiff is not suffering from "an impairment, or a combination of impairments listed in Appendix 1, Subpart P."[33] Similarly, an ALJ's statement that "based upon [his] thorough consideration of all evidence, [he] conclude[d] that the [claimant was] not suffering from any impairment, or combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months" clearly evidences that the ALJ properly considered the claimant's impairments in combination.[34]

---

[32] Jones v. Dep't of Health & Hum. Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (citing Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985), *aff'd on other grounds*, Sullivan v. Hudson, 490 U.S. 877 (1989)).

[33] Id.

[34] Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

At step two of the sequential analysis, the ALJ concluded that Plaintiff had multiple "severe" impairments. (R. 17-18.) The ALJ then proceeded to step three of the sequential analysis where he concluded that, "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 18.) In his subsequent assessment of Plaintiff's RFC, the ALJ stated that Plaintiff's RFC was based upon his "consideration of the entire record" as well as "all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 18.) After engaging in an extensive summary of the medical evidence—including discussion of Plaintiff's depression and obesity—the ALJ noted that "[Plaintiff's] subjective complaints and symptoms, including her allegations of pain and limitations as well as depression have been given a great deal of thought and carefully compared to the other evidence." (R. 21.) Accordingly, consistent with Eleventh Circuit precedent, these statements by the ALJ are more than sufficient to demonstrate that he properly considered Plaintiff's impairments in combination.[35] As such, the Court finds that the ALJ's written decision properly addressed Plaintiff's impairments in accord with Eleventh Circuit law.

_____

[35] *See e.g.*, <u>Nigro v. Astrue</u>, No. 8:06-cv-2134-T-MAP, 2008 WL 360654, at *2 (M.D. Fla. Feb. 8, 2008) (finding no error where the ALJ "thoroughly discussed the evidence relating to all of the Plaintiff's impairments [both severe and nonsevere] and took the combination of the Plaintiff's impairments into account in determining her residual functional capacity").

Even if it might have been a better practice for the ALJ to make more explicit findings regarding the severity or non-severity of the Plaintiff's other impairments, the ALJ thoroughly discussed the evidence relating to all of the Plaintiff's impairments and took the combination of the Plaintiff's impairments into account in determining her residual functional capacity.

**C.**     *The ALJ Properly Considered Plaintiff's Obesity.*

Finally, with respect to Plaintiff's contention that the ALJ's consideration of her obesity was improper, the Commissioner argues that Plaintiff's activities of daily living are inconsistent with her allegation of disabling obesity and any limitations that Plaintiff may have as a result of her obesity were fully considered by the ALJ when assessing Plaintiff's residual functional capacity.

Social Security Ruling 02-01p provides in pertinent part:

> [T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.... [A]djudicators [should] consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

The ALJ concluded that, because the evidence supported a finding that Plaintiff is capable of ambulating effectively, she did not meet the listing described in Section 1.00. (R. 18.) This conclusion is supported by the medical opinions of Dr. Shanawany, and Dr. Tindall who both observed Plaintiff to be capable of normal ambulation and intact motor strength in her lower extremities.

In addition, the ALJ also complied with the requirements of Ruling 02-1 p in evaluating the effect of Plaintiff's obesity on her RFC. The ALJ acknowledged that Plaintiff has knee pain and degenerative disc disease which are exacerbated by Plaintiff's morbid obesity. (R. 21.) The ALJ expressly took this into account in limiting Plaintiff to standing and walking only two hours in an eight hour workday and further limited her to occasional postural activities such as climbing, stooping, kneeling, crouching and crawling. (R. 21.) Other than Plaintiff's knee pain and disc disease which

are exacerbated by her obesity, Plaintiff failed to prove (or even mention) any other limitations cause by her obesity and the evidence does not establish that there were any additional limitations.[36]

Accordingly, the Court concludes that the ALJ fully and properly considered Plaintiff's obesity, and the functional limitations arising therefrom, in combination with all of her other impairments in evaluating Plaintiff's RFC.

## V. <u>CONCLUSION</u>

In view of the foregoing, the decision of the Commissioner is due to be **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Commissioner consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 25, 2009.

GARY R. JONES
**United States Magistrate Judge**

Copies to:
    All Counsel

---

[36] Indeed, Plaintiff testified that she lives in a second floor apartment and is able to climb the stairs, despite her allegations of disabling obesity.